## OBER & SONS COMPANY *et al. v.* MACON CONSTRUCTION COMPANY *et al.*

Where all the assets of an insolvent corporation have been placed in the hands of a receiver, and through him are in process of judicial administration, and certain intervening creditors file an independent petition praying the court to direct the sale of certain property which still remains in the hands of the receiver undisposed of, upon the grant of an order so directing, and the subsequent sale of such property thereunder, such creditors moving in the particular proceeding are not entitled to be allowed their counsel fees out of the general fund, or out of the fund realized from the sale of such property. The property being already in the hands of the receiver under the original proceeding, the mere effort of the intervening creditors to speed the cause in order to enable them to realize at an earlier date than probably they otherwise would have been able to do, does not authorize, out of either of the funds above mentioned, the allowance of the expense incurred by them in that proceeding.

Argued February 22,—Decided March 22, 1897.

Application for counsel fees. Before Judge Felton. Bibb superior court. November term, 1895.

*Hall & Hammond, Hill, Harris & Birch* and *L. F. Garrard,* for plaintiffs.

ATKINSON, Justice.

On March 10th, 1891, a petition was filed by McTighe & Co. against the Macon Construction Company, the Georgia Southern & Florida Railroad Company, the Macon & Birmingham Railroad Company and the Macon & Atlantic Railway Company, the two railroads first named having been built by the Macon Construction Company, and the latter being then in process of construction by that company. Under that petition the properties of these various

‹corporations were placed in the hands of a receiver. During the construction of said railroads the Macon Construction Company acquired considerable realty lying along the line of the two completed railroads, and also had considerable personalty, all of which was taken possession of by the receiver, who was appointed on March 10th, 1891. During the progress of the litigation, many creditors of the Macon Construction Company intervened, and obtained judgments against it, as well as against the other defendants respectively. The properties of the Macon & Atlantic Railway Company and those of the Georgia Southern & Florida Railroad Company were sold under a decree of foreclosure of certain mortgages, and an interlocutory decree had been rendered for the sale of the property of the Macon & Birmingham Railroad Company under a decree based upon the foreclosure of a mortgage, which sale had been postponed from time to time from May, 1895, to December, 1895. The property and assets of the Macon Construction Company were not under any general mortgage similar to the mortgages on those of the other defendant corporations, there being, however, a mortgage upon certain specified property of the Macon Construction Company in favor of the Exchange Bank of Macon, upon which claim that institution had likewise intervened. No final decree had been rendered in the main case, and no interlocutory decree had been taken for the sale of the property of the Macon Construction Company, nor had any application therefor been made by McTighe & Co., or any other creditor who had intervened. Among the intervening creditors were Ober & Sons Company, the National Bank of Baltimore, and the Lackawanna Iron & Coal Company. These intervening creditors, on April 2d, 1895, filed a petition for the purpose of bringing to sale the properties of the Macon Construction Company then in the hands of the receiver under the original petition. On said petition, by an interlocutory decree, sale was ordered, com-

missioners were appointed to conduct it, and by the commis-sioners the properties were sold for $43,500.00, the result of which sale was reported to the court. $15,850.00 of the proceeds of the sale represented the sum realized from the sale of the special property upon which the Exchange Bank had a mortgage, leaving $27,650.00 as the fund in which the general creditors of the Macon Construction Company were interested. Afterwards Ober & Sons Company and the other intervening creditors above named filed a petition praying that the fees of their counsel, who instituted the proceedings for the sale of said property, and brought the same to sale, should be paid out of the proceeds. Upon the hearing of this petition, one of the attorneys for the intervening creditors above named testified, that the law firm of which he was a member filed the petition above referred to, to bring to sale, under interlocutory decree, the properties in question; that this was done in the interest of the special clients his firm represented, and as well of the general creditors interested in said assets; that the time had arrived in the progress of the litigation when such property should be sold; that no steps had been taken looking to that end by counsel representing the original petitioners or any intervening creditors. He testified that the services rendered consisted of an investigation of the receiver's reports, in order to ascertain what were the properties of the Macon Construction Company subject to sale, as distinguished from the property of the other defendants, and the filing of the petition, and the representation of it in its subsequent course; that in and about the framing of the order for sale there was very considerable contest; in conducting that proceeding it became necessary for him to make several trips from Atlanta to Macon; that the whole service in representing said petition and obtaining the order was worth ten per cent. on the fund realized by said commissioners and brought into court, exclusive of the amount realized under the mortgage of the Exchange Bank, upon.

which fees were not claimed. The interveners were pro-ceeding to introduce further testimony as to the value of the services, when the court interrupted the progress of the inquiry, and announced that a solution of the special question made involved a question of law as to the liability of the fund, and not a question of fact, and upon consideration of that question sustained an oral motion to dismiss the petition, and granted an order refusing to allow the attorneys' fees prayed for. To this decision and judgment the intervening creditors excepted, and insisted that their counsel were entitled to fees, first, because they commenced and conducted the proceeding under which the property was sold and the fund brought into court; second, that this petition enured to the benefit alike of all the creditors interested in said fund; third, that the proceeding on their part was an act of diligence, of which creditors interested in the fund were not entitled to the benefit, without contributing to the expense thereof; fourth, that the case was analogous to the filing of a creditors' bill or bringing money into court on garnishment proceedings, and other similar cases, in which counsel for diligent creditors are entitled to have their fees paid out of the fund.

1. It will be noted that the counsel moving for an allowance of fees in the present case were not the counsel of the original moving creditors, but were counsel of intervening creditors, who are permitted to become parties complainant to the bill only upon condition that, sharing its benefits, they will likewise assume to share proportionately the expenses and burden of the litigation. It will be further noted that all the assets of the defendant corporation had been seized by the court, and were then in the hands of its receiver, being held by him in the due course of judicial administration. The receiver presumably was represented by counsel assigned to him by the court; at all events, it would have been the duty of the court to have assigned counsel to him, had he required advice in the management

of the affairs of the receivership. It is not apparent to us from the record that counsel for the intervening creditors who now move for this allowance of fees have performed such an extraordinary service, either in preserving or increasing the fund, as would entitle them, upon equitable considerations, to be paid an extra allowance for that service. The duties which they performed in regard to this matter, if necessary at all, were only such duties as diligent counsel should have performed on behalf, and in the prosecution of the rights of, their own clients. The assets in question being already in the hands of the court, they discovered nothing, and brought to the custody of the court no property of which it was not then possessed. There was no necessity for any action by them, and no reason why they should have moved in the premises, except a reason be found in the fact that the court, in adjudicating the more important questions involved in this general litigation, was disposed to move too slowly in the matter of reducing to cash the properties which were subsequently sold upon the application of these intervening creditors. To speed the cause of their clients is one of the ordinary duties of counsel, for which they are supposed to receive ample remuneration from them, and the act performed by the counsel in this case was merely to direct the attention of the court to the matter of delay in realizing upon this particular property, to the injury of their own clients, and to the injury of other creditors of the defendant. No formal motion or petition was necessary to bring about the result accomplished in this case. The attention of the court might as well have been directed to this unsold property by oral motion as in any other way, and the same direction doubtless would have been given the receiver as was given in the present instance. To allow the payment of counsel fees for the special services rendered in this case would be to establish another precedent, for which we find no warrant in the books nor in the inherent justice and equity of the

case, which might hereafter, and doubtless would, lead to·
pernicious consequences in the diversion of funds, which
ought properly to be appropriated to the payment of debts,
into channels neither contemplated by the law nor justified
by the purposes for which the property of a debtor is liable
to seizure. This is one instance in which the counsel of the
intervening creditor should look to his client for compensa--
tion. Accordingly, the court did not err in disallowing the
application for attorneys' fees; and the judgment is there-
fore        *Affirmed. All the Justices concurring.*