Wilson, J.
Plaintiffs and defendants Renshaw were copartners in the operation under a lease of certain mining property. The lease was in writing, and by its terms was to continue for one year from September 20, 1895, during which time the lessees were obligated to work the property continuously and with reasonable diligence. The active operations seem to have been under the management of the Renshaws, which proving unsatisfactory to plaintiffs, they on June 30, 1896, commenced this suit, which had for its object the dissolution of the copartnership, and an accounting. Plaintiffs also prayed that a receiver be appointed, with power to collect all moneys due to the copartnership, and to “ conduct the business of the partnership under orders of the court and apply all proceeds in payment of the indebtedness until the same are paid.” In pursuance of the application of plaintiffs, all parties being present at the hearing, the court appointed the defendant Whelan as receiver, and in its order provided among other things that the said receiver should take immediate possession of the property, and “ that he shall work the same, extract, mine and ship ore to the best interest of said property, and shall pay all laborers, and all just and fair charges in relation to the treatment of said ore, and all the ordinary expenses, and the balance of the receipts from the sales of ore from said property shall be deposited, together with a statement of the total amount of receipts and the total amount of expenditures, with the clerk of this court on the first and fifteenth day of each month until said lease expires, or until further order of the court.” In pursuance of this, the receiver took charge of the property, and proceeded to mine and extract ore, making bimonthly reports as required. On September 20, 1896, the lessors declared that the lease had terminated, and filed a petition in the court, praying that the receiver be ordered to release the property to them. This was resisted by all of the lessees, including the plaintiffs herein, who filed-an answer to the petition of the lessors *529 alleging that the mining claim was being operated by them through the receiver, and was then being held by them under the terms of an oral lease entered into with the lessors, by which the lease was extended for the period of six months from September 20, 1896, and prayed that the receiver be retained in possession of the premises and be continued under the original order appointing him according to its terms and conditions. On October 9, 1896, the receiver tendered his resignation and asked to be discharged on the ground that he was unable to work the property to an advantage, there being no ore in sight with which to carry on the work. At the same time, he filed in the clerk’s office his final report showing a deficit of about $1,900. To this, on the 19th of October following, the plaintiffs filed exceptions, on the sole ground, however, that the receiver had not accounted for all of the receipts with which he was properly chargeable. On the 21st of October, under a stipulation of the lessees and the lessors, the court ordered the possession of the property to be delivered by the receiver to the lessors. On the 18th of January following, a hearing was had on the exceptions to the receiver’s final report. Testimony was introduced by both parties, and the exceptions were overruled by the court. On the 27th of January following, the receiver filed a motion that the court enter such judgment in the premises as would provide for and secure the payment of the claims and demands against the lease, being the claims and demands embraced in his final report, with the addition thereto of the bills for his own wages and expenses and the expense of $100, attorneys’ fees, which he claimed to have necessarily incurred in resisting the allowance of the exceptions filed to his report and in the hearing thereon. To this he attached an itemized statement of the claims for labor, giving the name of each miner, the amount due to him, and also the amounts due to various persons for supplies. Treating this as a final report, plaintiffs filed exceptions to it, in which they alleged that as to the matters and things, accounts and items set forth in said two reports, as to whether the same *530 were true and correct accounts and proper to be allowed in the cause, and as to whether he had incurred said indebtedness set forth in said account, and as to whether his account and statement of his own services and the value thereof, and accounts and statements of his expenditures in said report contained were correct and true, they did not have and could not obtain information whereupon to base a belief. They further alleged as ground of exception that said claims and demands were not properly chargeable against these plaintiffs, but only against the funds or property of which the receiver had charge. As a further ground of exception, they alleged that the receiver was not authorized or empowered and had no legal right to incur any indebtedness under the order of court. On February 1, following, the motion of the receiver coming on to be heard, together with the exceptions of plaintiffs, the court after argument of counsel and without further evidence or proofs, sustained the motion and rendered judgment against the plaintiffs for the amount claimed by the receiver to be due.
Plaintiffs insist that the receiver had no right to incur any indebtedness whatever, and that his power with reference to the working of the property and the extraction of ore was limited by his power to pay the expenses therefrom. In answer to this, it may be said that the entire property of the partnership consisted only of this leasehold estate, that by the terms of the lease it could be preserved only by continuous working, that the plaintiffs themselves asked that the receiver be empowered to work the property and mine and extract ore, and that the order of court, made at their request, expressly directed the receiver so to do. Under no principle of law or justice can they be now heard to complain of -that which was done upon their motion, and at their own express request. It could not be determined whether the ore would pay the expenses of its extraction until after the expense of its extraction had already been incurred, and the plaintiffs when they asked for an order directing the receiver to work the property, must be held to haye assumed this liability. *531 Moreover the receiver repeatedly made reports, all of which showed that the operations were being conducted at a loss, and the record fails to show that the plaintiffs ever interposed any objection, or asked the court to modify or change its order in any respect. On the contrary, as late as September 23,1896, only a short time before operations finally ceased, in answer to a petition of the lessors, asking that they be given posseesion of the property, the plaintiffs requested the court to deny this petition, and to continue the receiver in possession under the terms and conditions of the original order.
Plaintiffs contend, however, that the court should not have rendered this judgment until the final determination of the suit for the dissolution of the copartnership and an accounting, and that these costs should then only have been taxed against the fund. The entire fund, which was the leasehold estate, had been surrendered by the consent, and at the request of plaintiffs, and was gone before the entry of this judgment in favor of the receiver, and therefore if the contention of plaintiffs be allowed, there could have been no payment of any of these expenses incurred at their request, for labor, materials, and for the compensation of the receiver. There béing no assets to distribute among the partners after the surrender of the lease, it is safe to presume that neither party would have displayed much energy or zeal in bringing the cause to a final determination. It is true that ordinarily, it is the usual practice to charge the funds or estate in the receiver’s hands with all costs and expenses, including compensation of receiver, but how can this be done in cases like the one at bar, where no funds or estate exist ? Must in such case the honest creditors be entirely defeated in their just claims ? Such a doctrine is certainly repugnant to both right and reason. Where there is no fund out of which the expenses can be paid, or the fund is not sufficient, the usual rule is that the party at whose instance the receiver was appointed should be required to provide the means of payment, and it is proper to tax such costs against him, in like manner as when a receiver is held to have been appointed without any *532 probable cause for so doing. Howe & Co. et al. v. Jones, 66 Ia. 156; Chapman et al. v. Pocock et al., 7 Colo. 204; Cassidy et al. v. Harrelson, 1 Colo. App. 459; Einstein v. Lewis, 54 Ill. App. 520; Myres v. Frankenthal, 55 Ill. App. 396. If the defendant partners are properly chargeable with any portion of these expenses, that is a matter between them and plaintiffs to be settled upon the final determination of the cause, or in some other proceeding. Neither the receiver nor his employees are concerned in it.
Plaintiffs further urge, however, that the court erred in not taking testimony upon the matters claimed to be put in issue by the exceptions which they filed in January, 1897. Whatever force there may be in this suggestion, it cannot be urged against anything unless it be the allowance of the receiver’s compensation and the attorneys’ fees. The expenses for labor and materials had been embraced in the report of October 9, and they were not excepted to by the plaintiffs, either as to their character, correctness, or amount. The report was therefore approved finally, so far as these items of indebtedness were concerned, and the court was not required to reopen this question upon exceptions subsequently filed. As for the receiver’s compensation, this was not for intricate and various duties, which would necessarily require a reference for an examination and an account. His duties were of a single and fixed character, more in the nature of those required of a mining foreman or high-class workman, and the court seems to have so regarded it by simply allowing him a per diem, as his compensation. Moreover, the amount and value of miners’ services in that locality appear from the reports theretofore made by the receiver, which the court could have properly considered in fixing his compensation. Again, we do not think that the loose and indefinite exceptions of plaintiffs to the receiver’s accounts and expenditures were sufficient to require proof. They should be of a more specific character, so that the court as well as the receiver should have notice as to what claims or expenditures were objected to, and must be sustained by proof. As to the necessity of
*533 appointment of counsel and the services rendered by them, the court had personal knowledge, and no proof was required. We do not understand that the court in all cases must necessarily hear evidence as to the amount of compensation to be allowed a receiver for himself, and as attorneys’ fees. It is a matter very largely within the discretion of the court, and if the facts are such that the court feels at liberty to act without the assistance of such evidence, and it does not plainly appear that there has been an abuse of discretion, the action of the court will be upheld. We see no error which requires a reversal of this judgment, and it will therefore be affirmed.

Affirmed.