## STUART *v.* BOULWARE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WEST VIRGINIA.

No. 1495.  Submitted January 6, 1890. — Decided January 20, 1890.

An allowance of counsel fees on behalf of a receiver is made to the receiver, and not to the counsel.

A receiver is an officer of the court, entitled to apply to the court for instruction and advice, and permitted to retain counsel, whose fees are within the just allowances that may be made by the court.

Allowances to a receiver for counsel are largely discretionary, and the action of the court below in this respect is treated by an appellate court as presumably correct.

MOTIONS TO DISMISS OR AFFIRM. The case is stated in the opinion.

*Mr. W. Hallett Phillips* for the motions.

*Mr. John E. Kenna* and *Mr. M. F. Morris* opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

William A. Stuart filed a bill against the Greenbrier White Sulphur Springs Company and others in the Circuit Court of the United States for the District of West Virginia, praying among other things for the appointment of a receiver, and upon the 13th day of April, 1883, A. L. Boulware of the city of Richmond, Virginia, was appointed by consent "receiver of

all the estate, both real and personal, of the defendant company." He was required to give bond in the sum of $50,000, to make an inventory of the property upon taking possession, and to file it with the clerk of the court, to keep a full, clear and accurate statement of his acts and doings, and to render an account monthly. It was further ordered that "until further orders the defendant company shall be allowed to conduct its business of hotel-keeping as it may deem best for the interest of said company and its creditors, and its leases and contracts for the proper conduct of its business already made shall be allowed by the receiver to stand, but the receiver shall collect and account for the receipts of the company, allowing the said company all expenditures necessary economically to conduct its business, and shall report his receipts and allowances monthly to this court." The receiver gave bond and entered upon the discharge of his duties accordingly. It appears that the property at the time was leased as a hotel, but with the season of 1883 that lease terminated, and thereafter the receiver rented the property from year to year under the authority of the court. The rents for five successive seasons amounted to $100,000 and upwards, of which this record shows the receipt of more than $70,000, (including some amounts from sales,) the disbursement by the receiver of more than $67,000, the subsequent receipt of something over $14,000 ; and that all of the rents had been received and accounted for except the receipts for the last season, the receipts and disbursements for that year having been reported to the court, but that report not appearing in this record. The record contains various petitions, reports and accounts, by the receiver, and orders thereon, and it is also shown that the receiver sold cattle, horses, wines and liquors belonging to the company, took various journeys with his counsel to Baltimore, New York and Parkersburg, and had litigation. In September, 1887, the Greenbrier White Sulphur Springs property proper, and some other property of the company, was sold by special commissioners appointed by the court, for $380,700, to the complainant, Stuart.

On the 26th day of October, 1885, the receiver was "author-

ized to retain to his own use, out of any funds in his hands as such receiver and on account of his services, the sum of thirty-five hundred ($3500) dollars, and he is further authorized to pay Leigh R. Page, esquire, the sum of eighteen hundred ($1800) dollars on account of his services as counsel to said receiver."

On the 5th day of February, 1889, the receiver filed his petition, setting forth that during his said receivership, acting under authority from the court, he had rented out the property for five successive seasons for more than $100,000, all of which had been accounted for except the receipts from the last year's renting, and the receipts and disbursements for that year had been reported to the court, and that, as soon as his report, which had been filed, had been acted upon by the court, which he asked might be speedily done, he was ready to submit his accounts to the auditor to examine and settle the same; that his duties as such receiver had terminated; that his services in that capacity had been arduous and exacting; that he had been allowed $3500 on account for those services, and desired to settle with his counsel, Mr. Page, for professional services rendered to him with "diligence and fidelity during the whole of said receivership;" that $1800 had been allowed said counsel under a special order in the fall of 1885, but he had, however, paid counsel $2500. In consideration of the premises the receiver prayed the court to allow him and his counsel such further compensation as the court might deem reasonable and proper. The matter coming on to be heard upon this petition, and having been argued by counsel, the court ordered "that the sum of four thousand, five hundred ($4500) dollars be, and the same is hereby, allowed to the said Boulware in full compensation for his said services, and the sum of two thousand ($2000) dollars be, and the same is hereby, allowed to the said Leigh R. Page in full compensation for his services as counsel to said receiver."

From this decretal order the complainant, Stuart, prayed an appeal to this court, which is now before us on a motion to dismiss or affirm. Counsel for appellees contends that these allowances should be taken separately, and as neither of them

amounts to $5000, that the appeal should be dismissed. On the other hand it is argued, and in this we concur, that if it were proper for the receiver to employ counsel, the allowance of reasonable counsel fees is to the receiver and not directly to the counsel, and that such fees would constitute only one of the items in the receiver's account; that the counsel had no cause of action, but the allowance was in legal effect to the receiver to enable him to make compensation for professional services. It is also insisted, as a second ground of dismissal, that Stuart prosecuted the suit as a creditor, "on behalf of himself and of other creditors of the company, who may come in and contribute to the costs of the suit, and that the record does not show that Stuart claims an interest sufficient in amount to give the court jurisdiction." But it appears from the record that Stuart claimed to be the holder and owner of a very large amount of the debts, which were first liens upon the property, and to which the surplus of the cash payment which would remain after paying the costs of suit and expenses of sale would be applicable; that the sale was for $380,700, and of that sum $38,070 was paid in cash, and that Stuart insisted that after deducting the costs of suit and expenses of sale therefrom, the larger part, if not the whole of the balance, should be repaid to him, so that Stuart's interest as claimed might cover more than $5000, if the disallowances should be sufficiently large. But while, therefore, we shall overrule the motion to dismiss, it is unquestionable that there was color for it, and that we can consider the motion to affirm in accordance with the rule on that subject.

The receiver is an officer of the court and subject to its directions and orders, and while, in the discharge of his official duties, he is at all times entitled to apply to the court for instruction and advice, he is also permitted to obtain counsel for himself, and counsel fees are considered as within the just allowances that may be made by the court. The order of October 26, 1885, recognizes the employment by the receiver of counsel in this litigation, although no specific original order giving that authority is found in the record. So far as the allowances to counsel are concerned, it is a mere question as to

their reasonableness. Nor is there any doubt of the power of courts of equity to fix the compensation of their own receivers. That power results necessarily from the relation which the receiver sustains to the court, and in the absence of any legislation regulating the receiver's salary or compensation, the matter is left entirely to the determination of the court from which he derives his appointment.

The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs entrusted to him, and the perplexity and difficulty involved in that management. Like all questions of costs in courts of equity, allowances of this kind are largely discretionary, and the action of the court below is treated as presumptively correct, "since it has far better means of knowing what is just and reasonable than an appellate court can have," as was remarked by Mr. Justice Bradley in *Trustees* v. *Greenough*, 105 U. S. 527, 537, where the subject is considered.

We find nothing in this record justifying us in arriving at the conclusion that these allowances were excessive. Considering the number of years covered by the receivership, the responsibility involved, the evident difficulties surrounding the receiver, and the amounts collected and disbursed, it would be going very far to hold the action of the Circuit Court to have been an abuse of discretion. The motion to affirm will therefore be sustained.

*Motion to dismiss denied. Motion to affirm granted.*