## CITY OF NEW ORLEANS v. MALONE et al.

(Circuit Court of Appeals, Fifth Circuit.
March 4, 1926. Rehearing Denied
April 8, 1926.)

No. 4618.

1. **Receivers** ⚖️153—President of corporation appointed receiver will be supposed to have knowledge of taxes due city, and must provide for payment so far as practicable.

President of corporation, who was appointed receiver thereof, will not be supposed to be ignorant of taxes due to city, and he has duty so far as practicable to provide for payment of such taxes.

2. **Receivers** ⚖️198(1)—In determining compensation of receiver and his attorneys, consideration should be given to amount realized, as well as labor and skill needed or expended.

In determining amount of compensation of receiver and his attorneys, due consideration should be given to amount realized, as well as labor and skill needed or expended, and other

circumstances having bearing on question of value of services.

3. **Appeal and error** ⚖️955—Although trial court's allowance for services of receiver and attorneys is presumably correct, appropriate relief will be granted, where allowances are so exorbitant as to indicate court's discretion was not properly exercised.

Although allowances by trial court for services of receiver and attorneys are presumably correct, if allowances made are so exorbitant as to indicate court did not properly exercise its discretion, appropriate relief will be granted.

4. **Receivers** ⚖️153—Receiver's account, showing receipts of $6,834.03, all of which, except $688.03, was used for fees of receiver and lawyers and court costs, held not to show good cause why only $688.03 should be paid on taxes due city aggregating $6,275.52.

Receiver's account showing total receipts of $6,834.03, all of which, except $688.03, went to pay fees of receiver and his lawyers and court costs, considered with other facts, *held* not to show good cause why only $688.03 should be paid on taxes due to city in amount of $6,275.52.

5. **Receivers** ⚖️194, 198(1)—Allowance of over $6,000 to receiver and attorneys, for operating manufacturing business for three months and active occupation for same period in closing business, less than $7,000 being realized, will be reduced to $1,500 to receiver and $500 to attorneys.

Where receiver operated manufacturing business for only three months, and was only kept actively occupied for same period in closing affairs, less than $7,000 being realized, *held*, that allowance of $6,000 to receiver and his attorneys will be reduced to $1,500 to receiver and $500 to his attorneys.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit by Henry W. Cobb against the Hernsheim Company, Limited, for appointment of a receiver, wherein Jones Fuller Malone was appointed receiver. On application of the City of New Orleans to require the receiver to pay certain taxes. From the decree, the City of New Orleans appeals. Reversed and remanded.

T. Semmes Walmsley, City Atty., and Francis P. Burns, Asst. City Atty., both of New Orleans, La., for appellant.

L. R. Hoover and Warren V. Miller, both of New Orleans, La., for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

WALKER, Circuit Judge. The appellant complains of the action of the court on its application (filed October 16, 1924) to require the appellee, the receiver of the Hernsheim Company, Limited, a corporation,

to pay personal property taxes due from that corporation to the appellant for the years 1921, 1922, and 1923, with interest thereon, aggregating $6,275.52. The appellee was ordered to show cause why those taxes should not be paid out of funds in appellee's hands. By the decree appealed from, which was entered June 16, 1925, the appellee was required to pay only $688.03 on those tax claims, the correctness of which was not controverted. The following is disclosed by the record:

On January 15, 1923, one Cobb, who was then a director of said corporation, filed a bill against it, which alleged that he owned $10,000 of past-due debenture bonds or notes of said corporation, that said corporation was unable to pay its debts as the same matured and that it was necessary and for the benefit of all the creditors of said corporation that a receiver be appointed, to preserve and administer the assets of said corporation for the benefit of all concerned. To that bill was attached as an exhibit a copy of the minutes of a meeting of the corporation's board of directors, at which was adopted the following preamble and resolution:

"Whereas, it is the consensus of opinion of this board of directors that, for the preservation of the property of the corporation and for the best interest of all concerned, a receiver be appointed; and whereas, the company, while not insolvent, is without funds to meet its obligations as they mature, but that, through the appointment of a receiver, outstanding accounts could be collected and merchandise on hand could be manufactured and marketed, so that the company could meet its obligations as they mature: Therefore, be it resolved that this corporation declares that it is unable to meet its obligations as they mature, and that the appointment of a receiver for the operation of the company is in its opinion for the benefit of all concerned."

The minutes of that meeting showed that the appellee, in addressing the meeting, stated " * * * that he was of the opinion that it would be to the best interest of every one concerned if the corporation applied for a receivership, as that would give the corporation a chance to work out its stock of goods and collect outstanding obligations, which would take care of the corporation's debts, as they matured."

On the filing of that bill, the appellee, who was then the president of said corporation, was appointed receiver of its assets. On the order of the court he appointed as his attorneys Louis R. Hoover and Warren V.

Miller, the last named being a director of said corporation, the attorney for the plaintiff in the suit in which the receiver was appointed, and the person who verified the bill. The appellee operated the cigar factory of said corporation continuously from January 15, 1923, until the court ordered it closed on April 21, 1923. On a petition filed by appellee on April 14, 1923, the court on the same day ordered him to sell all the movable effects of the corporation. Those effects, consisting of machinery, fixtures, supplies, etc., were sold for $4,476.25. Pursuant to a petition filed by appellee on May 9, 1923, the court on that day ordered the receiver to pay his attorneys $500 "towards compensation for their services as attorneys for the receiver."

Pursuant to a petition filed by the appellee on January 11, 1924, the court on that day made an order authorizing him to withdraw from the funds in his hands, as compensation for himself, $300 per month from January 15, 1923, to January 15, 1924. On January 3, 1925, appellee filed his final account, with a petition that the account be approved. That account showed a balance for distribution of $2,738.03, and contained a recommendation that $2,000 of that amount be paid to the receiver and his attorneys, $1,000 to the receiver and $1,000 to his attorneys; the account showing that the receiver had already disbursed $3,995.46 for his fees, legal costs, and expenses.

The record, including the appellee's account, is very meager in its disclosures of the receivership transactions. It does not show what assets were received and administered by the appellee. It shows no collection on obligations in favor of the corporation, and no action taken by the receiver in reference to such obligations. It shows no litigation to which the receiver was a party. It does not show that, after the cigar-making operations were ended pursuant to the above-mentioned order, the appellee did anything, except sell the machinery, equipment, etc., on hand, and get orders for disbursements to himself and his lawyers. While appellee's account shows that the amount of his receipts from sales of cigars was $2,168.18 in excess of his disbursements for operations, it does not show to what extent the tobacco manufactured was paid for prior to the receivership. It shows that, of the total amount realized by the appellee, $6,834.03, all except $688.03 went to pay fees to the receiver and his lawyers, and other court costs, most of it being absorbed by the receiver and his lawyers.

[1-5] It does not appear that the matter of the past-due and unpaid taxes was called to the attention of the court until the appellant filed its petition on October 16, 1924. As the receiver was the president of the debtor corporation, it is not to be supposed that he was ignorant of that liability. It was his duty, so far as it was practicable to do so, to provide for the payment of those taxes, for which the appellant had a lien or privilege prior to all other liens whatsoever except judicial costs. Louisiana Oil Exporting Co. v. Pelican Oil Refining Co., 155 La. 297, 99 So. 226; Union Trust Co. v. Great Eastern Lumber Co., 248 F. 46, 160 C. C. A. 186. The receivership was brought about by the concurrent action of one of the corporation's directors and his codirectors, with the result that, upon a showing that the corporation was solvent and could meet its obligations, if it was given a chance to work out its stock of goods and collect its outstanding obligations, the corporation's property was sheltered from its creditors while it was administered by the corporation's president with the assistance of one of its directors acting as the receiver's attorney.

To say the least, the appellee and his attorneys should not be permitted to profit unduly from the act of the court in taking into its custody the property of the corporation under the circumstances disclosed. In determining the amount of their compensation, due consideration should be given to the amount realized, as well as the labor and skill needed or expended, and other circumstances having a bearing on the question of the value of the services. While allowances by a trial court for such services are presumptively correct, as it has better means of knowing what is just and reasonable than an appellate court can have, yet where, in view of circumstances disclosed, the allowances made are so exorbitant as to indicate that the court's discretion in dealing with the situation presented was not properly exercised, appropriate relief should be granted. Newton v. Consolidated Gas Co., 259 U. S. 101, 42 S. Ct. 438, 66 L. Ed. 844; Stuart v. Boulware, 10 S. Ct. 242, 133 U. S. 78, 10 S. Ct. 242, 33 L. Ed. 568; Standard Cotton Seed Oil Co. v. Refining Co., 108 La. 74, 32 So. 221.

Appellee's account, considered in connection with what is otherwise disclosed by the record, cannot well be regarded as showing good cause why only $688.03 should be paid on the taxes due to the appellant. In view of the facts that the manufacturing business was operated by the appellee for the period of only three months, that the selling of what was left on hand and the closing up of the business could not have kept him actively occupied much longer, and that less than $7,-000 was realized, we do not think that, however meritorious the services of the appellee and his attorneys may have been, allowances of more than $1,500 to the appellee and $500 to his attorneys would be justifiable. The total allowances to the appellee and his attorneys are reduced to the sums of $1,500 and $500, respectively. The decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.